```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| JOHN L. BRYANT,            :  |  |
|                            :  | Civil Action No. 06-5396 (JBS) |
|           Petitioner,      :  |  |
|                            :  |  |
|      v.                    :  | **O P I N I O N** |
|                            :  |  |
| CHARLES E. SAMUELS,        :  |  |
|                            :  |  |
|           Respondent.      :  |  |

APPEARANCES:

John L. Bryant, Petitioner pro se
# 22733-039
F.C.I. Fort Dix
P.O. Box 7000
Fort Dix, New Jersey 08640

**SIMANDLE**, District Judge

On November 11, 2006, John L. Bryant (hereinafter "Petitioner"), an inmate at F.C.I. Fort Dix in Fort Dix, New Jersey (hereinafter "Current Facility"), filed his Pro Se Petition for a Writ of Habeas Corpus (hereinafter "Petition"), pursuant to 28 U.S.C. § 2241.[1]  The Respondent Petitioner named

---

[1] Section 2241 provides in relevant part:

   (a)  Writs of habeas corpus may be granted by the Supreme
        Court, any justice thereof, the district courts and any
        circuit judge within their respective jurisdictions.

   (c)  The writ of habeas corpus shall not extend to a
        prisoner unless-- ... (3) He is in custody in violation
        of the Constitution or laws or treaties of the United
        States....

in his Petition is Charles E. Samuels, Jr., Warden of the Current Facility.

## STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970). However, in comparison to civil rights complaints filed pro se, "[h]abeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). As the Supreme Court explained,

> Habeas Rule 2(c) . . . provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." See . . . Advisory Committee's note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)) . . . . A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted."  §

>2243.  Under Habeas Corpus Rule 4, if "it plainly
>appears from the petition . . . that the petitioner is
>not entitled to relief in district court," the court
>must summarily dismiss the petition without ordering a
>responsive pleading.

Mayle v. Felix, 545 U.S. 644 (2005).

"Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." McFarland, 512 U.S. at 856.  Dismissal without the filing of an answer or the State court record is warranted "if it appears on the face of the petition that petitioner is not entitled to relief." Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989); see also McFarland, 512 U.S. at 856; United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (habeas petition may be dismissed where "none of the grounds alleged in the petition would entitle [the petitioner] to relief").[2]

### DISCUSSION

Petitioner alleges that his constitutional due process rights were denied and "urges this . . . Court to correct [Petitioner's] custody classification and his sentence."  Pet. at 1.  Petitioner's allegations appear to present two interwoven yet

---

[2] For example, the Third Circuit has held that vague and conclusory allegations contained in a petition may be disposed of summarily without further investigation by the district court. See Thomas, 221 F.3d at 437; United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988).

3

completely independent strings of facts, as well as arguments ensuing from these facts.  This Court finds it prudent to address each of the two matters raised by Petitioner separately.

I. **Petitioner's Classification Claim**

   A. **Background**

It appears that Petitioner's classification claim is based on the following facts and arguments:

On February 17, 2006 (hereinafter "Incident Date"), Petitioner, being an inmate situated at Federal Prison Camp in Atlanta, Georgia (hereinafter "Original Facility"), was served with an incident report charging Petitioner with unauthorized contact with public (hereinafter "Charge I") and attempt to escape the Original Facility (hereinafter "Charge II").  See id. On February 22, 2006, Petitioner had an administrative hearing during which he pled guilty to the Charge I but not to Charge II. See id. at 1-2.  On March 7, 2006, a disciplinary hearing officer at the Original Facility conducted another hearing, apparently with respect to the Charge II, without Petitioner being present, and found Petitioner guilty of an infraction based on the Charge II (hereinafter "Administrative Decision").  See id.  Although Petitioner already served the disciplinary sanctions ensuing from Charges I and II, see Pet. at 8, Petitioner appealed the Administrative Decision to the Regional Office of the Federal

4

Bureau of Prisons (hereinafter "BOP"), and the Regional Office ordered rehearing of the Administrative Decision.  See Pet. at 2, see also Pet., Ex. A. Since Petitioner was transferred from his Original Facility to his Current Facility before the rehearing was held, Petitioner filed a complaint with the National Inmate Appeal (hereinafter "National Office") asserting that (1) the transfer prevented Petitioner from obtaining a fair rehearing due to Petitioner's loss of the opportunity to summon the witnesses who were confined as inmates (or employed as corrections officers) at the Original Facility on the Incident Date; (2) the BOP was ignoring the rehearing order issued by the Regional Office since the rehearing did not take place.  See Pet. at 2 and Ex. B.  Petitioner now asserts that Petitioner's due process rights have been violated since, as of the date of the Petition, "no rehearing ha[d] either taken place or been scheduled," Pet at 2, and "Petitioner strenuously objects to any rehearing being held at [the Current Facility since such hearing] would further violate . . . Petitioner's . . . right[s because Petitioner] could never receive a 'fair and impartial' hearing due to the fact that [his] witnesses . . . are not available."  Pet. at 8-9. Consequently, Petitioner requests the Court to "expunge [Charge II and the Administrative Decision] from his record [and] restore his loss of good time" credits which, presumably, resulted from the Administrative Decision.  Id. at 10.

**B.   Analysis**

Contrary to Petitioner's apparent belief, this Court cannot, under the doctrine of separation of powers, usurp the powers of the BOP, and enter a decision that Petitioner did not commit the infraction alleged in the Charge II.[3]  As to the constitutional aspects of Petitioner's classification claim, Petitioner failed to set forth any allegations that could be interpreted by this Court as a constitutional violation of Petitioner's due process rights qualifying for a habeas relief.

Although Petitioner challenges the Administrative Decision asserting that it was obtained through unconstitutional means, the Court has no reason to examine the issue since the relief was already granted to Petitioner when the BOP expressly agreed with Petitioner and mandated the rehearings.  Cf., Gilmore v.

---

[3] The principle of Separation of Powers is the foundation of our tripartite system of government.  See Mistretta v. United States, 488 U.S. 361, 372 (1989).  The Supreme Court has consistently reaffirmed "the central judgment of the Framers of the Constitution that, within our political scheme, the separation of governmental powers into three coordinate branches is essential to the preservation of liberty." Id.; see also Morrison v. Olson, 487 U.S. 654, 685-696 (1988).  The practical application of this doctrine compels the courts to recognize that "while our Constitution mandates that each of the three general departments of government must remain entirely free from the control or coercive influence, direct or indirect of, either of the others, the Framers did not require - and - indeed rejected - the notion that the three Branches must be entirely separate and distinct." Id.  Thus, while it is within this Court's power to examine an allegation and find that an agency acted in a fashion violating the United States Constitution or federal provisions, the Court has no power to find Petitioner *factually not guilty* of the alleged infraction.

California, 220 F.3d 987, 999 (9th Cir. 2000) (the court cannot order a relief that was already obtained).  Moreover, the fact that the rehearing did not take place as soon as Petitioner desired neither indicates that Petitioner will not be availed to a rehearing nor violates any one of Petitioner's constitutional rights.[4]  Finally, since Petitioner is expressly challenging his prospective hearing at Fort Dix, it appears that Petitioner is also of opinion that a rehearing at Fort Dix is indeed forthcoming.  See Pet. at 8.

As to Petitioner's assertion that Petitioner will be deprived of a fair rehearing unless Petitioner is transferred to the Original Facility, Petitioner's claim presents nothing but pure conjecture and should be dismissed as not justiciable under the ripeness doctrine.  "Ripeness concerns whether the legal issue at the time presented in a court is sufficiently concrete for decision."  Ricketts v. Lightcap, 567 F.2d 1226, 1232 (3d Cir. 1977).  To determine whether a dispute or claim has matured to a point warranting judicial intervention, a court analyzes "both the fitness of the issues for judicial decision and the

---

[4] Petitioner does not allege that he is entitled to a "speedier" rehearing under any particular federal provisions or the Constitution, and this Court is not aware of any such provision.  Moreover, Petitioner cannot be adversely affected by the loss of good time credits until Petitioner could qualify for parole with the lost good time credits factored in.  The Petition, however, is silent as to Petitioner being refused parole on the basis of loss of good time credits.

hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967). Ripeness doctrine evolved from Article III's case or controversy requirement.[5]  See Pic-A-State Pa. v. Reno, 76 F.3d 1294, 1298 n.1 (3d Cir. 1996) (citing Armstrong World Indus. v. Adams, 961 F.2d 405, 411 n.13 (3d Cir. 1992)).  The case or controversy requirement is a direct prohibition on advisory opinions, see Armstrong, 961 F.2d at 410 (citing Flast v. Cohen, 392 U.S. 83, 96 (1968)), and must be met regardless of the type of relief sought, including declaratory or injunctive relief.  See id. (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950)); Presbytery of N.J. of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994) (citing, inter alia, Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95 (1993)).

To satisfy Article III's case or controversy requirement, an action must present a legal controversy that: (1) is real and not hypothetical; (2) affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication; and (3) sharpens the issues for the court's resolution. See Armstrong, 961 F.2d at 410 (citing Int'l Bhd. of Boilermakers v. Kelly, 815 F.2d 912, 915 (3d Cir. 1987); Los Angeles v. Lyons,

---

[5] Article III, section 2, of the Constitution limits federal jurisdiction to actual "cases" and "controversies."  See U.S. Const. Art. III, § 2.

8

461 U.S. 95, 101-05 (1983)).  With respect to actions seeking declaratory relief under the Declaratory Judgment Act, "the difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[6]  Id. (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941) (internal quotations omitted, emphasis supplied)); see also Step-Saver Data Sys., Inc. v. Wyse Technology, 912 F.2d 643, 647 (3d Cir. 1990). Obviously, declaratory judgments are issued before an injury has been established or a statute has been

---

[6] The Declaratory Judgment Act provides:

> In the case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C.A. § 2201(a).  Notably, the Declaratory Judgment Act gives district courts a considerable amount of discretion so, even when a declaratory action is ripe, the Act gives the Court the power to issue a declaration but does not require the Court to do so.  See id. at 646-47; Armstrong, 961 F.2d at 410 n.9 (citation omitted).

enforced against a party, and, therefore, there is some inherent tension between declaratory judgments and the concept of ripeness.[7]  See Step-Saver, 912 F.2d at 647; see also Presbytery of N.J., 40 F.3d at 1463 (noting that ripeness is properly understood as involving a question of when a party may seek pre-enforcement review of a statute or regulation). Nevertheless, a federal court only has jurisdiction when the petitioner himself has suffered some threatened or actual injury from the alleged *illegal conduct*.  See Presbytery of N.J., 40 F.3d at 1463 (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)).

Petitioner's application, setting forth nothing but a hypothetical, fails to meet the above-listed requirements.  Short of Petitioner's bold assertion that he could not be availed to a fair administrative hearing at the Current Facility, no statement made in the Petition indicates that either the BOP or the administration of the Current Facility engaged or likely to engage in any illegal activity or have interests adverse to those of Petitioner.  Petitioner's allegations could be effectively

---

[7] Consequently, to determine the ripeness of declaratory judgment actions the Third Circuit has held that a court should look to the following three factors, among others: (1) the adversity of interest between the parties; (2) the conclusiveness of a judicial judgment; and (3) the practical help, or utility, of a judgment. See Pic-A-State, 76 F.3d at 1298; Freehold Cogeneration Assoc., L.P. v. Bd. of Regulatory Comm'rs of N.J., 44 F.3d 1178, 1188 (3d Cir. 1995), cert. denied, 116 S. Ct. 68 (1995); Presbytery of N.J., 40 F.3d at 1463; Armstrong, 961 F.3d at 411; Step-Saver, 912 F.2d at 647.

reduced to the claim that Petitioner is destined to be found guilty of the infraction based on the Charge II unless Petitioner is transferred to the Original Facility, so he would call certain inmates and/or corrections officers as witnesses. However, Petitioner (1) has no right to select his place of imprisonment,[8] (2) does not allege that he sought but was denied assistance of

---

[8] Petitioner does not have constitutional right to be assigned to the correctional institution of his choice. See Wilkinson v. Austin, 545 U.S. 209 (2005) (noting that the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976). Pertinent to Petitioner's due process claim, the Supreme Court has held:

> The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons. Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.

Meachum, 427 U.S. at 224-25(emphasis omitted). Moreover, the matters of placement of prisoners are among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Id., at 225. Hence, Petitioner has no right to demand transfer to the Original Facility. A fortuori, Petitioner has no right to demand transfer of the inmates and/or officers present at the Original Facility on the Incident Date to Petitioner's Current Facility, even if these inmates have not been released from BOP's custody and the officers are continuing their employ with the BOP.

11

the BOP or the Current Facility with respect to obtaining statements from the witnesses Petitioner believes to be crucial to his case, or appealed such denial of assistance to BOP's Regional and National Offices, and (3) offers no factual support to Petitioner's allegations that the upcoming hearing at the Current Facility would necessarily be unfair to Petitioner.[9] Since Petitioner's claim, as of now, presents nothing but pure conjecture about the outcome of future events, Petitioner's classification claim is unripe for resolution and will be dismissed without prejudice.   See Pic-A-State, 76 F.3d at 1298 n.1.

**II.   Petitioner's Calculation of Sentence Claim**

Petitioner's second string of facts and arguments appears to be as follows:

On February 15, 2000, in the Eastern District of Michigan, after pleading guilty to the charges of conspiracy to distribute more than five kilograms of cocaine, Petitioner was sentenced to 235 months of imprisonment (followed by five years of supervised release).  See Pet. ¶¶ 7-10.  Subsequently, Petitioner filed with his sentencing court a § 2255 motion asserting ineffective

---

[9] The Court notes, in passing, the Court's bewilderment as to Petitioner's interest to be transferred to the Original Facility for the purposes of the rehearing, since it appears that an officer employed at the Original Facility rendered the Administrative Decision deemed invalid by BOP's Regional Office.

assistance of counsel.  See id. ¶ 3.  Petitioner's § 2255 motion was granted on August 31, 2004, and, after Petitioner's original sentence was vacated, see id., Petitioner's sentencing court re-sentenced Petitioner "to 210 months [of imprisonment], followed by 5 years of supervised release."  Id. at 2.

> Petitioner is not challenging [t]he [sentencing] court ability/authority to impose the [new] sentence, . . . Petitioner assert[s] that the BOP/Charles E. Samuels is compu[]ting/executing his sentence in an unconstitutional manner by imposing the term of supervised release "in addition" to his 210 month sentence[,] as opposed to "as part" of his sentence . . . . .  Petitioner asserts that his sentence should consist of him serving a total of 150 months [rather than 210 month, since 210 months minus five years of supervision equal 150 months difference.]

Pet. at 2-3.

This Court finds it inexplicable that Petitioner asserts that Petitioner's sentencing court re-sentenced Petitioner "to 210 months, *followed* by 5 years of supervised release," id. at 2 (emphasis supplied), and yet simultaneously maintains that the BOP *errs* in its reading of the sentence as "imposing the term of supervised release 'in addition' to [Petitioner's] 210 month sentence," id. at 3, since the factual statements made in the Petition, as it reads now, set forth no violation of Petitioner's

rights.[10]  See Siers, 773 F.2d at 45; see also McFarland, 512 U.S. at 856; Thomas, 221 F.3d at 437; Dawson, 857 F.2d at 928.

Therefore, Petitioner's self-contradictory calculation of sentence claim shall be dismissed.  Moreover, even if this Court is to hypothesize that this apparent contradiction in Petitioner's allegations is a result of drafting that distorted the facts Petitioner wished to present (and, thus, setting forth a claim insufficient under the holding of McFarland v. Scott, 512 U.S. at 856), this Court has no reason to offer Petitioner an opportunity to amend his Petition, since Petitioner's calculation of sentence claim is subject to dismissal without prejudice as unexhausted.  Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981);

---

[10] Petitioner relies, in his allegations, on the language of 18 U.S.C. § 3583(a).  However, § 3583(a) provides that "[t]he court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release *after* imprisonment."  (Emphasis supplied.)  It appears that Petitioner's sentencing court did indeed make use of the enabling language of § 3583(a) by re-sentenced Petitioner "to 210 months, *followed* by 5 years of supervised release," Pet. at 2 (emphasis supplied), and the BOP correctly read the decision of Petitioner's sentencing court in light of § 3583(a).

Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:  (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.  See Goldberg v. Beeler, 82 F. Supp. 2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000); Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Exhaustion of administrative remedies is not required only if exhaustion swarts these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion is not required where petitioner demonstrates futility); Carling v. Peters, 2000 U.S. Dist. LEXIS 10288 (E.D. Pa. 2000) (exhaustion riot required where delay would subject petitioner to an immediate "irreparable injury").  Since Petitioner expressly states that only his classification claim was exhausted administratively, and since he does not assert that exhaustion of administrative remedies with respect to calculation of Petitioner's sentence would be either futile or expose Petitioner to the danger of immediate irreparable injury, Petitioner's calculation of sentence claim is subject to the exhaustion of administrative remedies requirement which Petitioner failed to meet.

15

Furthermore, if this Court is to hypothesize--in the alternative--that the apparent contradiction in Petitioner's allegations is a result of Petitioner's desire to assert that Petitioner's sentencing court did not express its intentions correctly by directing that the supervised release should follow the term of imprisonment, Petitioner's claim for relief would be cognizable only under § 2255, not under § 2241.

Section 2241 constitutes the general habeas corpus statute under which federal prisoners may seek relief for claims of unlawful custody. A petition brought under § 2241 challenges the very fact or duration of physical imprisonment, and seeks a determination that the petitioner is entitled to immediate release or a speedier release from that imprisonment. See Preiser v. Rodriquez, 411 U.S. 475, 484-86 (1973); see also Benson v. New Jersey State Parole Board, 947 F. Supp. 827, 829-31 (D.N.J. 1996) (noting § 2241 generally appropriate only for claims challenging continued execution of sentence for which immediate or speedier release is appropriate). Section 2255, which allows collateral review of the sentences of federal prisoners, has been the usual avenue for federal prisoners seeking to challenge the legality of their confinement. See In re Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997); see also United States v. Walker, 980 F. Supp. 144, 145-46 (E.D. Pa. 1997) (challenges to a sentence as imposed should be brought under §

2255, while challenges to the manner in which a sentence is being executed should be brought under § 2241).

Congress amended § 2255 as part of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA").  As of the AEDPA's effective date of April 24, 1996, a motion to vacate, correct or set aside a sentence under § 2255 must be filed in the sentencing Court within one year of the latest of: (1) the date on which the judgment of conviction became final; (2) the date of the removal of any impediment to making such a motion that was created by unlawful government action; (3) the date on which a right asserted by a movant was first recognized by the United States Supreme Court and made retroactive to cases pending on collateral review; or (4) the date on which movant could have discovered the facts supporting the claim[s] presented through the exercise of due diligence.  See 28 U.S.C. § 2255.  Furthermore, once a prisoner has filed one § 2255 motion, he may not file a second or successive motion unless he first obtains a certification from a panel of the appropriate Court of Appeals permitting him to do so on the grounds of (1) newly discovered evidence that would clearly and convincingly negate the possibility that a reasonable fact finder would have found the movant guilty of the offense charged, or (2) a previously unavailable and retroactively applicable new rule of constitutional law.  See 28 U.S.C. § 2255.

In this case, Petitioner seeks relief under § 2241. However, if this Court is to read Petitioner's claim as asserting that Petitioner's sentencing court intentions at resentencing were incorrectly reduced to writing, this claim would be more appropriately asserted under § 2255, in a motion to correct, vacate, or set aside his sentence.  In that event, the Petition must be dismissed for lack of jurisdiction.

The United States Court of Appeals for the Third Circuit has recognized that under certain very rare situations, a prisoner who cannot satisfy the gatekeeping requirements of § 2255 should be permitted to proceed under § 2241, which has neither a limitations period nor a proscription against the filing of successive petitions. See In re Dorsainvil, 119 F.3d at 251. However, the Third Circuit emphasized that a prisoner's inability or failure to comply with those gatekeeping requirements generally does not render § 2255 "inadequate or ineffective" so as to permit resort to § 2241, noting that such a holding "would effectively eviscerate Congress's intent in amending § 2255." Id.  Here, Petitioner states that he previously filed a § 2255 motion which is pending.  Petitioner here does not make a Dorsainvil claim.[11]

---

[11] The Court notes that were he to make such a claim, it would be dismissed, as Petitioner has not demonstrated that the Dorsainvil exception would apply to his case. This exception, which addresses what makes a § 2255 motion "inadequate and ineffective" is satisfied "where the denial of a habeas action

Whenever a civil action is filed in a court that lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed."  28 U.S.C. § 1631.  A second or successive § 2255 motion may be brought in the district of conviction only if the applicable Court of Appeals has authorized such filing.  See 28 U.S.C. § 2244.

In this case, it does not appear to be in the interests of justice to transfer the matter to the Court of Appeals for the Sixth Circuit for authorization as a second or successive filing under § 2255, since (1) it appears that Petitioner's sentencing court was consistent in its drafting of the original sentencing of Petitioner and the re-sentencing order with respect to the issue of making the supervised release consecutive to Petitioner's prison term rather than concurrent, and (2) nothing in the Petition indicates that Petitioner's sentencing court

---

would raise serious constitutional issues." Dorsainvil, 119 F.3d at 249 (citing Triestman v. United States, 124 F.3d 361, 377 (2d Cir. 1997).  In the Triestman and Dorsainvil cases, the serious constitutional issue was "that a change in substantive law rendered the conduct for which petitioner was convicted no longer criminal."  Id. (citing Triestman, 124 F.3d at 366).  In this case, the Petitioner makes no valid argument that the conduct for which he was convicted is no longer criminal due to substantive changes in the law.

experienced any problem expressing its intentions with respect to Petitioner's re-sentencing.[12]

**CONCLUSION**

For the foregoing reasons, Petitioner's Petition for a Writ of Habeas Corpus is DISMISSED.

An appropriate Order accompanies this Opinion.

                                    **s/ Jerome B. Simandle**
                                    JEROME B. SIMANDLE
                                    United States District Judge

Dated:    **November 27, 2006**

---

[12] However, the Court notes that Petitioner is free to raise his § 2255 claim in the proper court, should he decide to do so.